IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **WESTCHESTER FIRE INSURANCE COMPANY,**<br>　　　　　　　Plaintiff,<br><br>v.<br><br>**WASATCH ENGINEERING CONTRACTORS, INC.,** a Utah corporation; **DAVID BAGLINO,** a Utah resident; and **TAMMY CHAMBERS-BAGLINO,** a Utah resident,<br><br>　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:04CV78DAK |

　　　　This matter is before the court on Plaintiff's Motion for Summary Judgment. A hearing on the motion was held on August 3, 2005. At the hearing, Plaintiff-Surety Westchester Fire Insurance Company ("Westchester") was represented by Heather S. White. Defendants Wasatch Engineering Contractors, Inc. ("Wasatch"), David Baglino, and Tammy Chambers-Baglino (the "Baglinos") (collectively referred to as "Defendants" or "Indemnitors") were represented by Scott C. Welling. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the motion under advisement, the court has further considered the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

1

Westchester has moved for summary judgment on the $200,751.86 in losses it claims it has incurred pursuant to two payment bonds issued to Wasatch

## I. UNDISPUTED FACTS

On or about June 12, 2002, Westchester issued two payment bonds guaranteeing that Wasatch would pay all subcontractors it hired to perform work on two separate projects–the Weber River Parkway Project (the "Weber River Project") and the Wasatch Middle School Water line Replacement Project (the "Park City Project") (collectively, the "Projects"). The contracts on the Projects, as well as governing statutes, required Wasatch to provide the owners with performance and payment bonds. In exchange, Defendants executed an indemnity agreement (the Indemnity Agreement"), agreeing to reimburse Westchester for all losses, costs, and attorneys' fees incurred by Westchester pursuant to its bond obligations. Specifically, the Indemnity Agreement provided that the Indemnitors would

> [E]xonerate, indemnify, and keep indemnified the Surety [Westchester] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, and counsel fees) and from and against any an all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Principals or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.

The Indemnity Agreement also provides:

> In the event of any payment by the Surety[,] the Principals and Indemnitors further agree that in any accounting between the Surety and the Principals, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be *entitled* to charge for *any and all* disbursements made by it in good faith in and about the matters herein contemplated by this Agreement *under the belief that it is or was liable* for the sums and amounts so disbursed, *or that it was necessary*

> *or expedient* to make such disbursements, **whether or not such liability, necessity or expedience existed**; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

(emphasis added).

Wasatch failed to pay several subcontractors, resulting in claims against the payment bonds. Three of those claims resulted in lawsuits against Westchester. Wasatch failed to pay the claims, requiring Westchester to investigate their validity. During the investigation, Wasatch acknowledged that it owed the following amounts on three claims but was unable to pay them: $7,274.25 to Chris-Corp; (2) $54,661.69 to Staker & Parsons Companies on the Weber Project; and (3) $4,617.00 to Staker on the Park City Project. Accordingly, Westchester paid these undisputed amounts to the claimants, as required by the payment bonds.

Westchester further investigated the disputed amounts on those claims and ultimately determined that it was potentially liable for the disputed amounts, making it expedient to settle those claims. Therefore, pursuant to the terms of the Indemnity Agreement and consistent with its payment bond obligations, it negotiated settlements on the remaining amounts to minimize the amount of liability, costs, and fees to both Wasatch and Westchester.

Westchester was also presented with two additional claims that did not materialize into lawsuits: one for $32,252.99 by FNW/Plumber's Supply Co. ("FNW") and another for $1,547.12 by AMEC Earth Environmental, Inc. ("AMEC"). Westchester investigated those claims and ultimately determined that it was potentially liable for the disputed amounts, making it expedient to settle those claims. Thus, pursuant to its payment bond obligations, it negotiated settlements

3

on the remaining amounts to minimize the amount of liability, costs, and fees, to both Wasatch and Westchester.

Westchester incurred attorneys' fees in resolving the payment bond claims. As of March 15, 2005, Westchester's losses in resolving the payment bond claims total $200,751.86, which includes interest calculated at the legal rate of 10% from the date of the expenditure through March 15, 2005. Westchester asserts that it will continue to incur fees and costs in obtaining recovery from Indemnitors and claims that it is entitled under the Indemnity Agreement to recover those fees and costs, as well. Westchester requests that the court permit it to itemize these losses in a subsequent affidavit once judgment is entered.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In reviewing the factual record, we construe all facts and make reasonable inferences in the light most favorable to the non-moving party. *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir.1998).

Where the moving party bears the burden of proof on an issue, that party cannot prevail on summary judgment "unless the evidence that he provides on that issue is conclusive." *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998). *See also Equal Employment Opportunity Comm'n v. Union Independiente De La Autoridad De Acueductor Y Alcantarillados*

*De Puerto Rico*, 279 F.3d 49, 55 (1st Cir. 2002) (same); *Calderone v. United States*, 799 F.2d 254, 258 (6th Cir. 1986) (explaining that if a summary judgment movant has the burden of proof, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.") (citation and emphasis omitted); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.").

**III. DISCUSSION**

Defendants concede that Westchester has paid certain of the claims made by subcontractors. They contend, however, that the Baglinos should not be held liable due to procedural defects in the payment bond claims. They argue that the payment bond claimants did not provide preliminary notice to the Defendants, as required by the Utah Code.

The Baglinos, however, are incorrect in their argument that the subcontractors' failure to provide such notice is fatal to Westchester's indemnity claim. The statute provides two exceptions to the preliminary notice requirement: it "does not apply to a [contractor] who is in privity of contract with the payment bond principal [Wasatch]" or "if a notice of commencement is not filed" by "the original contractor [Wasatch] . . . within 30 days after commencement of the project." Utah Code Ann. §§ 63-56-38.1(1)(c) and 38-1-27(9)(a).

The Baglinos contend that because they had no involvement with the projects, the privity exception does not apply. However, the statute does not require privity with the

5

Indemnitors–only with the payment bond principal, who is Wasatch.  Moreover, there is no evidence that Wasatch ever filed a notice of commencement, which further negates any basis for denying the bond claims for failure to provide preliminary notice and disposes of the Indemnitors' argument that Westchester is not entitled to recover.

Next, Defendants argue that Westchester did not properly defend Defendants' interests in connection with these claims, simply paying the full amount of the claims over Wasatch's objections.  Thus, Defendants contend, the payments were not made in good faith.  They essentially claim that the Indemnity Agreement does not permit Westchester to unilaterally decide whether the payments were made for "expediency" or in "good faith," thus contending that these are fact questions for a jury to decide.

Defendants seek to rewrite the Indemnity Agreement.   In this case, the Indemnity Agreement itself sets forth the standard governing payment by the surety:  "The Surety shall be *entitled* to charge for any and all disbursements *made by it in good faith* in and about the matters herein contemplated by this Agreement *under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expedience existed . . . ."

Thus, Westchester need only demonstrate that it paid the claims under the good faith belief that it was *potentially*–not actually–liable for them.   In the Agreement, the parties also agreed that the only evidence necessary to prove Westchester's entitlement to indemnification is a sworn statement by Westchester establishing "the fact and amount of the liability."

Moreover,  Defendants have provided no evidence to support their contentions that the

claims were not paid in good faith, that the payments were not reasonable or necessary, that Westchester overpaid two claims.  Mere conclusory assertions by the Baglinos that the payments were excessive and/or not paid in good faith will not defeat summary judgment.  This is particularly true when Westchester has provided competent evidence to demonstrate that it provided Wasatch with notice and an opportunity to respond before Westchester made any payments–and Westchester also informed them of its intent to pursue indemnification from them of any amounts paid under the bond.  The evidence submitted by Westchester–and not genuinely disputed by Defendants–certainly demonstrate that Westchester tried on many occasions to communicate with Defendants before paying any amounts, but Defendants were unresponsive.  On the occasions when Defendants finally provided a response to Westchester, such responses were vague and unsupported.

Although Defendants submitted three exhibits at the hearing on this motion–purportedly to support their argument that the payments were excessive–such a submission has no relevance to Westchester's determination at the time of payment that it was potentially liable for them.  Thus, the court finds that Defendants have failed to create a genuine issue of disputed fact to defeat summary judgment.

Finally, Defendants argue that Westchester is not entitled to the prejudgment interest claimed, nor to attorneys' fees at this stage of the proceedings.  They argue that the attorneys' fees and interest were not reasonable or necessarily incurred in connection with the payment bond obligations.

As Westchester points out, there is no requirement in the Indemnity Agreement that the

attorneys' fees be "reasonable," thus obviating the need to demonstrate reasonableness. As to prejudgment interest on attorneys' fees, the court agrees with Westchester that because Indemnitors agreed to pay *all* fees, the amounts were fixed as of the date they were incurred and an award of prejudgment interest is appropriate.

### III.   CONCLUSION

Based upon the foregoing, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Plaintiff in the amount of $200,751.86 as of March 15, 2005, with losses (including costs, interest, and attorneys' fees) incurred and established by affidavit of an agent of Westchester through the date the judgment is fully paid.

DATED this 5th day of August, 2005.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

8